UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
X------------------------------------------------------------------X

LUIS DOMENECK, individually and on behalf of all
others similarly situated,

                                   Plaintiff,

               -Against-

THE CITY OF NEW YORK, OFFICER S.
RICHARDSON and OFFICER A. AKHLAQUE,

                         Defendants.

X——————————————————————————X

18-cv-07419-PGG

**[PROPOSED]AMENDED
CLASS ACTION
COMPLAINT**

**JURY TRIAL
DEMANDED**

       Plaintiff Luis Domeneck, by his attorney Daniel L. Ackman, for his Amended Complaint
alleges as follows:

## NATURE OF THE ACTION

       1.     This action concerns the policy and practice of the New York City Taxi and

Limousine Commission (the "TLC"), a division of Defendant City of New York, of seizing

vehicles without a warrant to assist in the payment of civil fines that could be imposed under

NYC Admin. Code §19-506 ("Section 19-506").

       2.     These seizures are based either on (a) an unadjudicated claim that the vehicle was

being used for-hire without a license or was acting beyond the scope of its license or (b) an

unadjudicated claim that a person with a conviction for violating Section 19-506 in the previous

36 months either was using a vehicle as a "for hire" vehicle without a TLC license or was using

it beyond the scope of its TLC license.

       3.     In addition, in applying this scheme the TLC has created substantive law through

its adjudicatory process in violation of the New York City Administrative Procedure Act.

-1-

4.     The policy and practice of TLC in seizing vehicles is unconstitutional for two reasons. First, it violates the Fourth Amendment and Article I, Section 12 of the New York State Constitution. The vehicles of the plaintiff was seized in the absence of a warrant issued by a magistrate and there was no applicable exception to the warrant requirement. Neither Plaintiff nor any of the class members was charged with a crime in connection with the warrantless seizure of their vehicles. The TLC claimed only that their conduct rendered them liable for a civil penalty. Because no other exception to the Fourth Amendment's warrant requirement applies, the TLC's warrantless seizure of Plaintiff's and the class members' vehicles was unconstitutional.

5.     Second, the TLC's seizure policy and practice violates the Due Process Clause of the Fourteenth Amendment. No judicial process was afforded before the TLC's inspectors seized Plaintiff's or the class members' vehicles and there was no mechanism for challenging the seizure after the fact (though one could contest the underlying charge). Moreover, the primary justification the TLC asserts for seizing vehicles without judicial process is the ostensible concern that owners of seized cars might not pay the applicable civil penalty if they are later found liable. Thus, to release the seized vehicle, the TLC demands that drivers post a $2000 "bond" (which is, in reality, just a cash payment) in order to retrieve their vehicles from impound or it demands the driver plead guilty.

6.     The Due Process Clause does not permit the TLC to seize property without judicial process, and hold the property hostage, based on speculation that a person who has been issued a civil notice of violation might not pay the fine if he or she is later found liable— especially where, as here, the TLC had no factual basis to believe that either Plaintiff or any class member would not have paid the civil penalty if found liable.

7.      In addition, with regards to owners of vehicles who were not driving the vehicles or physically present at the time of the alleged violation, the TLC seized vehicles without probable cause to believe that the absent owner permitted the use of the vehicle as an unlicensed for-hire taxi.

8.      The TLC's policy and practice, by which it makes law through presumptions announced in the course of adjudications and not by public notice and comment, violates the City Administrative Procedure Act. As explained in more detail below, the TLC has through a published adjudication created a presumption that owners of TLC-seized vehicles consented to the use of their vehicles in violation of TLC regulations. The TLC may not create such a presumption in the course of adjudication but only through a rule-making process.

9.      Until the fall of 2015, the TLC seized more than 9,000 vehicles annually. Plaintiff and the class members must be compensated for the significant monetary harm the TLC's unconstitutional policy and practice has caused them to incur.

10.     This action is brought on behalf of the named plaintiff and on behalf of (a) other drivers of vehicles seized by the TLC and (b) non-driver owners of vehicles seized by the TLC who personally retrieved their vehicles.

## JURISDICTION AND VENUE

11.     This action arises under the Fourth and Fourteenth Amendments to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. § 1983.

12.     The jurisdiction of this Court is predicated upon 28 U.S.C. §§ 1331, 1343(4), 1367, and 2201.

13.     Venue is lodged in this Court pursuant to 28 U.S.C. § 1391(b) because one or more Defendants reside in this District and because a substantial part of the events giving rise to the claims occurred in this District.

## PARTIES

14.     Plaintiff Luis Domeneck is a resident of Bronx County.

15.     Defendant City of New York (the "City") is a municipal corporation incorporated and existing pursuant to the laws of the State of New York. The New York City Taxi & Limousine Commission is an administrative agency for the City, created by § 2300 of the New York City Charter, and is responsible for the seizures at issue in this action.

16.     Officers S. Richardson and A. Akhlaque are employed of the City of New York, who are engaged as Inspectors by the TLC.

## JURY DEMAND

17.     Plaintiff demands a jury trial.

## FACTS

### The Statutory Scheme

18.     NYC Code § 19-506(b)(1) provides that any person who knowingly operates or permits another to operate a taxi or for-hire vehicle without a license to do so shall be guilty of a violation and upon conviction in criminal court shall be subject to a fine or even imprisonment.

19.     NYC Code § 19-506(e)(1) provides that, "as an alternative to the [criminal] penalties provided in [subsection (b)(1)]," a person who operates or permits another to operate an unlicensed taxi shall be "liable for a civil penalty" of $1,500 for a first violation and $2,000 for a second violation committed within a thirty-six month period.

20.     NYC Code § 19-506(e)(3) provides that a "proceeding to impose a civil penalty prescribed in" subsections (e)(1) or (e)(2) "shall be commenced by the service of a notice of violation returnable before the [TLC] or an administrative tribunal of the [TLC]."

21.     Whether a case is brought in criminal court or a TLC administrative tribunal, a person found in to have violated § 19-506(b) or (e) is not guilty of a crime (that is, not a felony or even a misdemeanor)and has not been accused of a crime. That person is only "liable for a civil penalty" or "guilty of a violation."

22.      As a matter of policy and practice, however, the TLC rarely, if ever, writes § 19-506 summons to make them returnable in criminal court.  In the vast majority of cases, the summons are returnable in and adjudicated by the TLC administrative tribunal known as the OATH Taxi and Limousine Commission Limousine Tribunal.

23.     NYC Code § 19-506(h)(2) provides that, if the owner of a vehicle is found liable for violating subsections (b)(1) or (b)(2) two or more times within a 36-month period, "the interest of such owner in any vehicle used in the commission of any such second or subsequent violation shall be subject to forfeiture upon notice and judicial determination." Forfeiture based on a second offense must be pursued in a separate proceeding "in accordance with the provisions of the civil practice law and rules [CPLR]."

24.     The TLC is not authorized to pursue civil forfeiture for first-time violations of subsections (b)(1) or (b)(2).

25.     NYC Code § 19-506(h)(1) provides that a TLC inspector may seize a vehicle if such inspector has probable cause to believe the vehicle has been operated in violation of subsections (b)(1) or (b)(2).

26.     In short, the ordinance purports to permit the seizure of a vehicle without a warrant even on a first offense and regardless of whether if intends to seek forfeiture or the vehicle and indeed regardless of whether it has a legal claim of right to seek forfeiture or the vehicle.

27.     Subsection (h)(1) further provides that, unless the notice of violation has been dismissed, a seized vehicle shall not be released until all towing and storage charges and all civil penalties have been paid or unless a bond has been posted in an amount satisfactory to the TLC.

### Enforcement

28.     Prior to the fall of 2015, the TLC seized thousands of vehicles TLC inspectors routinely seize vehicles where they allege that the driver and/or the owner has violated NYC Code § 19-506.

29.     Upon information and belief, the vast majority of these cases were brought against alleged first-time violators whose vehicles were not subject to civil forfeiture even if the TLC's claims against them were proven.

30.     Upon information and belief, all or nearly all of these cases were brought before the OATH Taxi and Limousine Tribunal and not in criminal court.

31.     The TLC did not obtain a warrant before seizing any of these vehicles.

32.     None of the exceptions to the Fourth Amendment's warrant requirement applies in any of these cases.

33.     The TLC inspectors' practice was to issue notices of violation to the drivers and inform them to appear, or have the vehicle's owner or the owner's nominee appear, at the TLC's office in Long Island City if they wish to retrieve the vehicle.

34.     At the TLC's office in Long Island City, the TLC practice was to offer driver or owner the option of paying a monetary penalty plus towing and storage fees, in which case the seized vehicle would be returned to them the same day. No driver or owner was allowed a hearing at which they could contest the seizure *per se*.

35.     The TLC would also inform the owner or driver that, if they opted to deny liability, they would be given a hearing date, and the vehicle will not be returned to them prior to the hearing unless they posted a $2,000 cash bond, which they would lose if found liable at the hearing.

36.     The TLC would further inform the owner or driver that, even if they prevailed at the hearing, they will have to take additional steps, and it will take months to cause the TLC to return the $2,000 cash bond.

37.     Thus, if the vehicle's owner chooses to contest the allegation, he will have to pay $2000 immediately and then, if he is found not guilty, apply for reimbursement.

38.     In all cases, the TLC would not return a seized vehicle to its owner (in advance of the dismissal of all charges) unless the owner paid towing and storage fees.

## Constitutional Violations

39.     Even where there was probable cause to believe that a driver had committed a violation, the warrantless seizure of vehicles operated by alleged first-time violators, whose vehicles are not subject to civil forfeiture, is unconstitutional.

40.     The TLC practice was to seize vehicles that were not contraband, that were not being used in a crime or an alleged crime and were not alleged to present a threat to public health or safety.

41.     The TLC inspectors rarely if ever had probable cause to believe, based on their observations of the driver's conduct, that a non-driver owner of a vehicle knowingly allowed the driver to operate the vehicle for hire without a license.

42.     Despite this absence of probable cause, the TLC's policy and practice was to issue notices of violation to the vehicle's owner, even where the owner was not present at the scene, and even where there is no evidence that the owner knowingly allowed the driver to operate the vehicle without a license or beyond the scope of its license.

43.     In order to permit this practice, the TLC Chairperson issued decisions on "appeals" filed by the TLC itself from its own tribunal in which the Chairperson ruled that there is a "rebuttable presumption" that the owner gave the driver permission. *See In the Matter of New York City Taxi & Limousine Commission Petitioner v. Allsta Inc.* (TLC Chair Dec. March 2013).

44.     The administrative law judges in OATH's appellate unit consistently rejected these purported rulings by the TLC Chairperson, finding them unjustified by the language of the Administrative Code, and holding that the Chairperson's "presumption" orders are entitled to no deference and that no presumption against the owner applies. *See Taxi & Limousine Commission v. Angels Limo LLC* (TLC Appeal Unit Dec. April 2, 2013).

45.     Despite these rulings by OATH's appellate administrative law judges, the TLC persisted in issuing notices of violations to owners without probable cause and without any judicial imprimatur.

46.     The "solution" advanced by TLC of creating an ad hoc "presumption" of permission on the part of owners through its adjudicatory process does not cure the constitutional problem and in addition violates the City Administrative Procedure Act. This presumption was

created by former Chairman Yassky as Commissioner of TLC and enforced by him within the Class Period as reflected by his written decision in the *TLC v. Allsta, Inc.*, Chairperson's Final Determination & Order (Summons # #1450785A) attached hereto as Exhibit 1. Joshi continued to enforce this presumption during her time as Chairperson within the Class Period.

47.     The TLC did not afford drivers or owners a hearing in advance of the seizures.

48.     The TLC also did not afford drivers or owners a post-seizure hearing that might have allowed them to retrieve their vehicles (apart from the hearing where a driver or owner could challenge the § 19-506 allegation).

49.     The TLC's practice, however, was to return a seized vehicle upon the driver or owner paying a cash bond, pleading guilty and paying a fine or being found not liable by the TLC administrative tribunal.

50.     Only after summary judgment was granted for the plaintiffs in *Harrell v. City of New York*, 138 F. Supp. 3d 479, 494 (S.D.N.Y. 2015), on reconsideration in part, No. 14-CV-7246 (VEC), 2015 WL 9275683 (S.D.N.Y. Dec. 18, 2015), on the plaintiffs' Fourth Amendment and Due Process claims did the TLC state that it had ceased its practice of seizing vehicles without a hearing and without a warrant.

**The Individual Plaintiff**

51.     On or about August 15, 2015, about an hour after midnight, while Mr. Domeneck was stopped while driving his Chevrolet Tahoe at the corner of Amsterdam Avenue and 106th Street. TLC inspectors, identified to plaintiff as S. Richardson and A. Akhlaque, acting without a warrant, without having applied for a warrant and without affording , Mr. Domeneck a hearing, seized Mr. Domeneck's vehicle, causing him injury.

52.     At the time of the seizure, Mr. Domeneck was speaking with a woman on the street. He was not working for hire of seeking payment of a fare.

53.     The inspectors gave Mr. Domeneck a summons charging him with violating Section 19-506(b)(1).

54.     The inspectors ordered Mr. Domeneck to give them his keys and demanded he wait sitting on the curb.

55.     The inspectors demanded that Mr. Domeneck take public transportation home even after he informed them he was a disabled veteran whose physical condition made taking public transportation difficult.

56.     Mr. Domeneck personally went to the TLC in Long Island City to retrieved his vehicle on Monday, August 17, 2015.

57.     The TLC did not allow Mr. Domeneck a post-suspension hearing at which he could have challenged the seizure of his vehicle.

58.     When he appeared that the TLC on August 17, TLC, inspectors told him that to retrieve his vehicle, he would need to pay $750, plus towing and storage fees.

59.     The inspectors did not inform Mr. Domeneck that he would need to plead guilty to a violation as well, though Mr. Domeneck did fill out a form which appears to be a concession that he violated Section 19-506.

60.     After agreeing to pay the fine, Mr. Domeneck was permitted to retrieve the vehicle from an impound lot in Brooklyn.

61.     The TLC did not seek forfeiture following the seizure Mr. Domeneck's vehicle.

**Class Action Allegations**

62.     Plaintiff brings this class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all drivers of vehicles or owners of vehicles seized by the TLC based on allegations of violating of NYC Code § 19-506(b)(1).

63.     Plaintiff proposes that the class be certified with two subclasses: (a) drivers of vehicles that were seized based on allegations of violating of NYC Code § 19-506(b)(1) regardless of whether they were owners of the vehicle; and (b) owners of vehicles seized based on allegations of violating of NYC Code § 19-506(b)(1) where they personally retrieved the vehicle after the seizure. In either case, drivers or owners of vehicles that were abandoned would or drivers who are charged with a crime (that is, a felony or misdemeanor) at the time of the seizure be would be excluded from the class.

64.     This case is appropriate for treatment as a class action under Rule 23(b)(1)(A) because the prosecution of separate actions will create the risk of inconsistent or varying adjudications, thus establishing incompatible standards of conduct for Defendants.

65.     This case also should be certified as an injunctive class under Rule 23(b)(2) because Defendants have acted, or failed to act, on grounds generally applicable to the putative class, thereby making appropriate final injunctive relief with respect to the Rule (b)(2) class as a whole.

66.     This case also is appropriate for treatment as a damages class under Rule 23(b)(3) because common issues predominate over individual issues, and a class action resolving the claims of this putative damages class is superior to any other method of fair and efficient adjudication.

67.     The TLC admits it seized roughly 1,000 vehicles per month in 2015. Thus thee class is so numerous that joinder of all members would be impractical.

68.     Joinder also is impracticable because, upon information and belief, many members of the class are low-income persons, may not speak English, and likely would have great difficulty in pursuing their rights individually.

69.     There are questions of law and fact common to the class that predominate over questions affecting only individual members, including the core question of the constitutionality of the TLC seizure program.

70.     The claims of the class representative are typical of the claims of the class members.

71.     The entire class will benefit from the remedial and monetary relief sought by the putative class representatives.

72.     The class representative will fairly and adequately protect the interests of the class. There are no conflicts of interest between the class representative and the absent class members, and the class representative will vigorously prosecute this action on behalf of the class.

73.     Defendants have consistently acted and refused to act in ways generally applicable to the class.

74.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy because: (a) the prosecution of thousands of separate actions would be inefficient and wasteful of legal resources; (b) the members of the class are scattered throughout New York City and beyond and are not likely to be able to vindicate and enforce their constitutional rights unless this action is maintained as a class action; (c) the issues raised can be more fairly and efficiently resolved in the context of a single class action than piecemeal

in many separate actions; (d) the resolution of litigation in a single forum will avoid the danger

and resultant confusion of possible inconsistent determinations; (e) the prosecution of separate

actions would create the risk of inconsistent or varying adjudications with respect to individuals

pursuing claims against Defendants which would establish incompatible standards of conduct for

Defendants; (f) Defendants have acted and will act on grounds applicable to all class members,

making final declaratory and injunctive relief on behalf of all members necessary and

appropriate; and (g) questions of law and/or fact common to members of the class, especially on

issues of liability predominate over any question, such as that of individual damages, that affect

individual members.

75.     There will be no extraordinary difficulty in the management of the class action.

### FIRST CAUSE OF ACTION
### (42 U.S.C. § 1983 – Fourth Amendment – Warrantless Seizure)

76.     Plaintiff hereby incorporates each of the foregoing paragraphs as if fully set forth

herein.

77.     The warrantless seizure of Plaintiff's vehicles violated the Fourth Amendment to

the United States Constitution regardless of whether there was probable cause to believe that

there had been a violation of NYC Code § 19-506.

78.     The warrantless seizure of Plaintiff's vehicles was unreasonable and was not

justified.

79.     Defendants had an official policy, practice, and custom of effecting warrantless

seizures of vehicles in connection with issuing notices of violation of NYC Code § 19-506, even

though such vehicles were not (either as a matter of law or as a matter of practice) subject to

forfeiture.

80.     Defendants' policy, practice, and custom of effecting warrantless seizures of vehicles in connection with issuing notices of violation to alleged violators of NYC Code § 19-506 caused plaintiff and the class members to be deprived of their Fourth Amendment rights.

81.     Defendants acted under color of state and local law.

82.     By implementing, promulgating, enforcing, and/or effectuating a policy, practice and custom pursuant to which TLC inspectors routinely seized vehicles without a warrant, without an applicable exception to the warrant requirement, and without any claim of right to possess the vehicle, Defendants have deprived and will continue to deprive each and every Plaintiff and members of the class of rights, remedies, privileges, and immunities guaranteed to every citizen of the United States, in violation of 42 U.S.C. § 1983, and of rights guaranteed by the Fourth and Fourteenth Amendments of the United States Constitution.

83.     Defendants' actions were deliberate, reckless, and indifferent to Plaintiff's constitutional rights.

84.     As a direct and proximate result of the misconduct and constitutional violations detailed above, plaintiff and the class members suffered damages in an amount to be determined at trial.

## SECOND CAUSE OF ACTION
### (New York Constitution Article I, § 12)

85.     Plaintiff hereby incorporates each of the foregoing paragraphs as if fully set forth herein.

86.     The taking of plaintiff's vehicle constitutes a seizure under the New York Constitution.

87.     Defendants' warrantless seizures, without any right or intent to claim ownership of  the vehicles, violated the Article I, § 12 of the State Constitution.

-14-

88.     Defendants acted under pretense and color of state and local law.

89.     Said acts by said defendants were without authority of law and were in abuse of their powers and with the specific intent to deprive plaintiff of his constitutional rights secured by New York Constitution.

90.     Defendants' actions were deliberate, reckless, and indifferent to Plaintiff's constitutional rights.

91.     As a direct and proximate result of the misconduct and constitutional violations detailed above, plaintiff and the class members have suffered damages in an amount to be determined at trial.

## THIRD CAUSE OF ACTION
### (42 U.S.C. § 1983 – Fourteenth Amendment – Due Process Clause)

92.     Plaintiff hereby incorporates each of the foregoing paragraphs as if fully set forth herein.

93.     The seizure of plaintiff's vehicle violated the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

94.     No judicial process was afforded before the TLC's inspectors seized plaintiff's or the class members' vehicles.

95.     No judicial post-seizure process was available apart from a hearing to challenge the Section 19-506 violation.

96.     The primary justification for the TLC's policy and practice of seizing vehicles without judicial process is the ostensible concern that plaintiff and the class members might not pay the applicable civil penalty if they subsequently were found liable after a hearing.

97.     The Due Process Clause does not permit the TLC to seize property without judicial process, and hold the property hostage, based on speculation that a person who has been

issued a civil notice of violation might not pay the fine if he or she is later found liable –

especially where, as here, the TLC had no factual basis to believe that either plaintiff or any class

member would not have paid the civil penalty if found liable.

      98.    Defendants' policy, practice, and custom of seizing vehicles without judicial

process in connection with issuing notices of violation of Section 19-506 caused plaintiff and the

class members to be deprived of their rights under the Due Process Clause of the Fourteenth

Amendment.

      99.    Defendants acted under color of state and local law.

      100.    By implementing, promulgating, enforcing, and/or effectuating a policy, practice

and custom pursuant to which TLC inspectors routinely seize vehicles without judicial process in

order to secure the payment of an alleged but unadjudicated violation, defendants deprived each

plaintiff and members of the plaintiff class of rights, remedies, privileges, and immunities

guaranteed to every citizen of the United States, in violation of 42 U.S.C. § 1983, and of rights

guaranteed by the Fourteenth Amendment to the United States Constitution.

      101.    Defendants' actions were deliberate, reckless and indifferent to plaintiff's legal

rights.

      102.    As a direct and proximate result of the misconduct and constitutional violations

detailed above, plaintiff and the class members have suffered damages in an amount to be

determined at trial.

## FOURTH CAUSE OF ACTION
### (42 U.S.C. § 1983 – Fourteenth Amendment – Due Process Clause)

      103.    Plaintiff hereby incorporates each of the foregoing paragraphs as if fully set forth

herein.

104.    TLC inspectors routinely issued summonses to owners of vehicles where the owners are not the drivers of the vehicles. In such cases, the summonses were issued without a legitimate claim of probable cause that the owner had given permission to the driver to engage in unlicensed for-hire activity.

105.    Defendants' policy, practice, and custom of seizing vehicles without judicial process in connection with issuing notices of violation of Section 19-506 caused plaintiff and the class members to be deprived of their rights under the Due Process Clause of the Fourteenth Amendment.

106.    Defendants acted under color of state and local law.

107.    By implementing, promulgating, enforcing, and/or effectuating a policy, practice and custom pursuant to which TLC inspectors routinely claim probable cause as to allegations against vehicle owners who were not present or seen by the inspectors, Defendants have deprived and will continue to deprive each and plaintiff and members of the plaintiff class of rights, remedies, privileges, and immunities guaranteed to every citizen of the United States, in violation of 42 U.S.C. § 1983, and of rights guaranteed by the Fourteenth Amendment to the United States Constitution.

108.    Defendants' actions were deliberate, reckless and indifferent to plaintiff's legal rights and caused him and members of the plaintiff class damages in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION
### (City Administrative Procedure Act)

109.    Plaintiff hereby incorporates each of the foregoing paragraphs as if fully set forth herein.

110.    The enactment of the automobile seizure and seizure hearing policies and practices without a compliance with the City Administrative Procedure Act (CAPA) was in contravention of the New York City Charter. As such the policy was void from the outset and all penalties administered thereunder are also void and of no force or effect.

111.    Defendants' actions were deliberate, reckless and indifferent to plaintiff's legal rights.

112.    As a direct and proximate result of the misconduct and constitutional violations detailed above, plaintiff and the class members have suffered damages in an amount to be determined at trial.

WHEREFORE, Plaintiff and the plaintiffs class members request that the Court grant the following relief:

a.    An order certifying this action as a class action;

b.    A judgment declaring that the seizure of plaintiff's vehicles violated the federal and New York Constitutions;

c.    A judgment declaring that the seizure of plaintiff's vehicles violated CAPA;

d.    An injunction prohibiting defendants from engaging further in the policies, practices, and customs complained of herein;

e.    Compensatory damages in an amount to be determined at trial, including without limitation all towing and storage costs and other damages proximately caused by the deprivation of plaintiff's and the class members' vehicles;

f.    Punitive damages against the individual defendants in an amount to be determined at trial;

g.    An order awarding disbursements, costs, and attorneys' fees; and

h.      Such other and further relief as this Court may deem just and proper.


Dated: New York, New York
        December 11, 2019


                                                /s/_____
                                                Daniel L. Ackman
                                                222 Broadway, 19th Floor
                                                New York, NY 10038
                                                Tel: (917) 282-8178
                                                dan@danackmanlaw.com

                                                *Attorney for Plaintiff*